The last case this morning is Janssen Products against, is it Evenus? Pharmaceuticals. Mr. Englert. May it please the court. My name is Roy Englert. I represent appellants, which I'll refer to simply as Janssen. I'll refer to appellees sometimes as Hengrui, to cover both the Chinese parent and the U.S. sub, and sometimes as Evenus, when focusing on just the U.S. operation. I'd like to reserve three minutes for rebuttal. As this court is aware, the international theft of intellectual property poses an existential threat not just to American businesses, but to democracy itself. That is why Congress enacted the Defend Trade Secrets Act in 2016 as an amendment to the Economic Espionage Act. That is why this court recognized that issues arising from ex-party seizure requests in the less urgent but parallel realm of trademark infringements are immediately appealable, and that is why we ask this court to apply the same reasoning here. As for the merits, this case is about a party that had much more information than it disclosed, swore it had disclosed everything, and then used delaying tactics when it became clear that its representations of full compliance were repeatedly false. This case, to me, looks a lot like a mere discovery dispute, and you did seek relief under the DTSA, and the district court refused to give it to you, and now you're here. Why should we treat this any different than a mere discovery dispute, and why should we say we have jurisdiction? Because there is ongoing use of our trade secrets in seeking regulatory approvals here in the United States, because there is a need to get to electronic materials, electronic machines that EVNS has either falsely claimed to have searched or said it simply won't search, such as WeChat, because this is intangible property, intangible information. It can be moved anywhere in the world, because we don't know the source, how EVNS got this information. I know all that's important. I'm not trying to diminish that, but Congress has said, Congress has essentially said in their language on our jurisdiction that they don't want to see piecemeal appeals. Except for denials of injunctions, and it was the denial of injunction provision of Title 28 U.S.C. that this court construed in Vuitton to say that in the trademark context, a denial of a seizure order is an immediate appeal. So the statute says that these civil seizure orders are available when an injunction under Rule 65 would be inadequate. Doesn't that seem like a pretty sharp distinction between the civil seizures and an injunctive relief? It would if we didn't have Vuitton, because Vuitton construed parallel language, no order other than a seizure order would be adequate, and construed that to support the inference that a seizure order is an injunction, rather than the opposite inference as the Ninth Circuit has construed that language. If it didn't, in Vuitton, in Vuitton itself, and that was a 1991 case, that section in the Trademark Act, Section 1116, I believe it was, was entitled injunctions. Part of the reasoning that the panel of this court said they had jurisdiction was by Congress titling that section as injunctions. It meant to treat it as like an injunction, and we could follow that language, and therefore apply our interlocutory jurisprudence to review the question. Apologies for interrupting, Judge Fischer, but 1116A is captioned injunctions. 1116D is the seizure remedy, and rather than see an inconsistency there that seizures and injunctions... And you think that's consistent? Yes. Okay. Yes. Yes. Two very large facts drove the seizure application and drive this appeal. Yet the district court's ruling mentions neither of them, and Atbilly's brief barely mentions them. Fact one, Ingrui was caught red-handed in possession of Janssen documents containing valuable trade secrets, and continues to possess and use them. This is of a piece with well-known threats that U.S. law enforcement has identified from Chinese theft and use of the intellectual property of U.S. innovators. Fact two, in response to document requests, eVenus, the U.S. subsidiary, produced only a tiny fraction of the emails involving its own key employees, Dr. Ya and Ms. Sun. We know this for a certainty because a third party in the patent action produced approximately ten times as many emails involving Dr. Ya and Ms. Sun in response to identical requests. Either eVenus destroyed emails, or it lied about having searched the places and devices it should have searched, or both. Again, Ingrui has been caught red-handed in this conduct. It's like a prosecutor in a criminal case who withholds breaking material and then denies that the material exists. Ingrui proceeds on this appeal as if the question were, other than that, Mrs. Lincoln, how was the play? The court below committed errors of law and simply ignored critical facts when it denied the seizure application. In what ways did the district court abuse its discretion when it found that Janssen didn't satisfy all eight requirements for the ex parte seizure? Well, it only addressed a couple of them. And in saying there was no immediate and irreparable injury, it simply made no mention of the possession and use of trade secrets, none at all. And that is the immediate and irreparable injury is the ongoing possession and use of our trade secrets. It's hard to understand how this case could not have immediate and irreparable injury when the district court didn't even mention the big fact that drives this whole litigation. A second error the district court made was it said the scope of the seizure was too broad. In cases involving information as opposed to handbags or cigarettes, the only way to seize the information is to seize the devices on which that information may be stored, whether they're servers or laptops or iPhones. That's the only way to get at this information. And if you read any case in which a seizure order has been granted under the Defend Trade Secrets Act, although they usually involve a single rogue employee who is known to have stolen information, they all involve seizures of servers, laptops, et cetera. The seizure here is larger because it's a large company that stole from a large company and no individual has been identified who stole the information. So it had to be broader. And the district court simply said you're trying to get all their servers. The district court also made no mention of the very strong safeguards built into the statute and into the proposed order we submitted, including the appointment of a special master and the prompt return of the materials. And failing to take that into account when weighing the competing harms was also simply ignoring a key aspect of the problem detriment. On June 23rd, we learned for the first time that eVenus had never taken the basic step of searching its e-mail servers, despite earlier representations to the court that there was nowhere else to search. Before we could do anything at all in response to that stunning revelation, the district court's sua sponte stayed both the patent action and the trade secrets action. And we submitted our ex-party seizure application just a couple of weeks after that. That's very quick activity and the short time in the interim had been spent litigating over the stay, which the district court initially lifted and then reinstated. The district court denied the seizure application. Although there are eight statutory factors and we briefed all of them. I could make the trademark case for a minute. The statute that we were interpreting in Fritton said that the courts vested with jurisdiction of civil actions arising under this act shall have the power to grant injunctions. The civil seizure provision that we're dealing with here doesn't have that same language. In fact, again, it only applies when injunctions would be inadequate. I just don't see how that's not a material distinction. Well, let me refer to another part of the court's reasoning in Fritton besides what I've already referred to. The court said this can only be one of two things, an injunction, which is an equitable remedy, or an attachment, which is a legal remedy. And it's not an attachment. It's an injunction. So if the dichotomy that this court recognized in Fritton actually covers the universe, there's no question that this is as much an injunction as it was in that case. Are there differences in the statutory language? Sure. But the legislative history shows that Congress intended to give the same rights to holders of trade secrets that it gave to other IP holders. That's page 3 of the Senate report. And if we were denied appeal rights because of minor differences in language between the two statutes, that certainly wouldn't be giving equal rights to the holders of trade secrets, which are the more important form of intellectual property. Why can't there be a third kind of animal, which is a civil seizure order, which is not directed to a party, unlike an injunction? It's not enforceable by contempt, unlike an injunction. It's just a different thing. Well, several things about Fritton. Number one, this court said it must be one or the other. So that's the ratio, disincentive and die of a decision of this court. Number two, all seizure orders are directed to the U.S. Marshals. And, therefore, the same thing was true in Fritton that is true in this case. They are directed at a party that can be held in contempt if, for example, it doesn't turn over, if it hides things and doesn't turn them over. So it is enforceable by contempt. So, again, these might be things to think about as a matter of first principle, but with Fritton on the books as a decision of this court, I think they are all nondistinctions or distinctions without differences according to the reasoning of this court. So your position essentially is we're bound by Vuitton. Yes. And, again, let me be very clear about that. The holding of Vuitton is limited to the Wynum Act. But the reasoning can be examined in some detail, and the reasoning does not end up drawing does not end up making the distinctions between the two statutes make a difference to the reasoning. Wouldn't it be easier for you to argue jurisdiction under 1292A1 and to say that this, you know, the denial of this seizure order is injunctive rather than saying that we have to, you know, extend Vuitton? We do argue that it's injunctive. Right. That is our argument. But we could do that. We could find jurisdiction under 1292A without addressing whether Vuitton should be extended to this statute in particular, because, I mean, there are some differences in the statutory language, as we've been discussing today, right? Sure. Well, obviously, we would welcome a holding from first principles that the order below is denial of injunctive relief and, therefore, immediately appealable. Just with Vuitton on the books, we had thought that that was the relevant interpretation of 1292A. Our application was required as one of the statutory factors to show that eVenus, quote, would evade, avoid, or otherwise not comply with such an order, close quote. We made that showing. eVenus's failure to produce emails from Dr. Ya and Ms. Sun shows that it is not obeying legitimate discovery orders and almost certainly destroyed evidence. Again, eVenus flatly refuses to search WeChat, over which much of the relevant discussion took place. eVenus told the district court it had searched all places that were likely to contain discoverable information when it hadn't even searched its servers. Very basic. This is about as strong a showing as could ever be made in a case involving corporate theft of trade secrets. So my time has expired, and unless the court would like me to answer further questions, I'll reserve the balance of my time. Thank you. Mr. Stronsky. May it please the Court. I'm Jim Stronsky from Kroll & Moring, the New York office. I represent Hongre, which is China's largest private publicly traded pharmaceutical company, and a subsidiary named eVenus, which Your Honor got right. Sort of. And that entity is tiny. It's based in New Jersey, and it's comprised of fewer than 10 employees. And what it is is, among other things, the U.S. law requires that pharmaceutical companies outside the U.S. have an agent to deal with the FDA for filing purposes. So they are the agent for filing purposes. So they communicate with the FDA with respect to applications that have been filed. Your Honor, you know, our arguments in our brief, I think it's pretty clear that this is a discovery order. The district court found that these issues largely at JA-27 relate to discovery disputes that have been ongoing. They have been extensively managed by this court for the last several months. And that's the case. At this point in time, in July, when they made this application, there had been a patent case that had been going for a couple of years, represented by other counsel. And in that case, our client, Hungry, we admit, produced documents that say Janssen Confidential, have a Janssen Confidential stamp. Now, of course, putting a stamp on something doesn't make everything in it confidential or a trade secret that's enforceable. But that's true. Our client did do that and produced it. We've recently disclosed the case has gone forward, recently disclosed how we came into possession of it. The point is there's no basis. This is about eVenus. And a case is proceeding, and eVenus does not have those documents. eVenus has not produced those documents. eVenus wouldn't have those documents because, again, it is not a company that's developing products. It's a company that, its expertise is regulatory and dealing with the FDA and dealing with phased drug applications. And so here, their case, if you look at their reply brief, it's a lot of hyperbole, but they look at a differential, and we heard it today, 10 times more documents that were produced in the patent case. Again, a discovery dispute, but 10 times more documents produced in the patent case than produced by eVenus. Well, do they say, is there any analysis of the documents that are missing, something important or notable that was produced by Fresenius, not produced by eVenus? No. Mr. Stronsky, I know you want to call this a discovery case. Yes, Your Honor. Because in doing so, you're hopeful that we'll consider this as one that does not, an appeal that doesn't give us jurisdiction. But, I mean, how can we really distinguish our law interpreting 1292A1 and say that under the Defense of Trademarks Act, we don't have jurisdiction from a denial of seizure order, but under the Trademark Counterfeiting Act, interpreted by Vuitton, that we do have jurisdiction? How can we really distinguish those two? Yes, Your Honor. That goes to the heart of jurisdiction. And as a general rule, seizure orders are not injunctions and are not appealable. And the construction, the interpretation by this Court in Louis Vuitton was based on the very specific statute, as the panel noted. It is entitled, the 16, 25 U.S.C. 1116 is entitled injunctive relief. It is. It's not A entitled. The statute section is entitled injunctive relief. A provides authority to enter injunctive orders, injunctions. D provides authority to enter seizure orders pursuant to A, pursuant to the authority to enter injunctions. And so based on that, this Court in 1991, and again in Laurelard, has construed that to allow an appeal because it is an injunction according to Congress. Absent that, it's not an injunction. Rule 65A1 makes clear, Federal Rule of Civil Procedure 65A1, that no preliminary injunction may issue without notice. So you can't have an ex parte preliminary injunction. If anything, this is, as Judge Porter said, why can't we have something that's just called a seizure order that's not appealable? That's what this is. Perhaps Congress intended, as this Court found, that with respect to the Lanham Act, which in that statute is different in many important ways, that it intended it to be an injunction. Now, that is, there's a split in authority on that. Some other circuits, the Ninth Circuit has said, because it requires, because it's ex parte, it can't be an injunction. So there's, but this Court, at a minimum, need not and should not extend Louis Vuitton, which is based on that statute. And in this statute, in this statute, it's important, 18 U.S.C. 1638b is where the seizure is. It's not, doesn't talk at all about injunctions. C, a separate section, provides remedies, other remedies, which would include injunctions. And so Congress, the only reason to extend Louis Vuitton to this situation and disregard the prohibition of Federal Rule 65a1, does not exist in this statute. You began by saying that as a general rule, seizure orders aren't injunctions. I don't know if that was intentional or if you're acknowledging there is a little bit of daylight where civil seizures can be injunctions, perhaps under the, like the case we have, the Trademark Act. Yes, I think in this circuit, Your Honor, it would be considered at least appealable under 28 U.S.C. 1292, yes. Any other instances when the seizure order is an injunction? Not that I'm aware of, Your Honor. Why should they have to wait until the end of this litigation to determine whether or not they could get a seizure order for the, for what they've asked for in their request? Right, right. They have all the other remedies available to them, Your Honor, in addition to seizure. They can get a TRO. They can get an injunction. They could get an order that requires that something be returned if they could establish the injunctive relief necessary for that. And so there are other remedies that they have. Most importantly, they have discovery. And in this case, it is true that our prior counsel, prior counsel in a patent case, had a vendor that made a mistake with respect to collecting EVS documents. And those documents, we went back and looked at it. They had, it involves IT. I don't want to go beyond what I'm comfortable with. But they made a mistake which resulted in some documents that were on a server not being produced if they were not also on laptops, is my understanding at least. But regardless, we produced all those documents, Your Honor. They were also shared with someone else, were they not? What's that? Weren't they shared with another company? What? Weren't those trade secrets shared with a third party? Okay. EVS didn't share, doesn't have the trade secrets. And that's part of the question. They didn't share with anybody else. There's an allegation that some aspect of something on one of these documents was included in an email sent to an affiliate of Hungary that helps it with analytical work. So it's a company in China that they control and that they got something that may or may not be a trade secret. Again, you put a confidential stamp on a document, it doesn't make it a trade secret. There's no evidence in this record. To me, with that kind of history, there's certainly a legitimate reason to try to, you know, whatever service they are that your client has that could possibly continue to share that information. Right, Your Honor. I think what's important here for Judge Fischer is to understand what this proposed seizure order is directed to. The documents that were produced that have Janssen confidential on them were produced from Hungary in China, not EVS, which again is the FDA agent that just deals with applications and finalizing applications. So there's no basis in this record that they have it. And that's one of the things the judge is very familiar with this case. She said this is a discovery dispute. I'm managing it, have been managing it, will be managing it. It has been managed. We've produced documents from China. We've produced more documents from EVS. But the point is the Court also said, and there's no basis in the statute for me to conclude that EVS, which is where it's directed, has any of these documents. And so that's one of the factors. There's no basis to prove that they had or have any of these documents. And again, the statutes are, the two statutes, the Lanham Act and the seizure provisions under the DTSA, are different in important ways. The DTSA requires that the Court only enter it in exceptional circumstances. That's not in the Lanham Act. And, in fact, the Lanham Act allows the Court to infer irreparable harm if there's a likelihood of success. Okay? So the law is quite different in terms of how the Court applies these statutes and what these statutes require. And so in this case, Your Honor, this is directed to EVS. And that's, we're dealing with a record from a year ago in terms of what EVS, whether EVS had something. And the Court would have had to find each of the, each of the factors required by the statute are clearly, clearly appear with specific facts. And the specific facts were missing on whether seizing EVS documents would, there was any immediate harm. Because the Court understood that there was no spoliation. It sounds like you're getting to a merits answer. Can you conjure up a seizure claim that was denied that would give us jurisdiction to review the decision of the district court? If, if this, if it was an adjunct to a preliminary injunction, for sure, that the Court, the Court could consider the preliminary injunction, there would be an appeal on that. But could, could the district court issue the order that Jansen asked for and call it an injunction? Say, I enjoin defendants to turn over all servers and, but label it right there clearly. This is an injunction. The Court could have entered a TRO at that point. And it was a restraining order, not a seizure. And this seizure order, Judge Friedman, would have seized my, my client EVS's entire computer system. But I mean, I guess my question, though, really is, is that could, is this a matter of labeling? We talk about, I mean, you, you talked a lot about how the Lanham Act uses the word injunction. Like, so could we change the label of the order, call it an injunction or a preliminary? No, because it is not an injunction. An injunction, again, is directed primarily to a party. And, and it's directed primarily. Let me ask you a more specific question. Let's suppose the district court did the opposite of what they found here and they entered a seizure order. Should your client have the right to appeal? That's a good question. I've been thinking about that. I know. You knew that was coming. I gave you enough time to get prepared on that one. I knew it was coming. And certainly I would be unhappy. But the fact that I'm unhappy doesn't change this Court's jurisdiction, Your Honor. And perhaps if, you know, there are other factors, right? If they really, if they did what they really wanted to do, which was to shut down our client by seizing all their records and all their employee records, by serving and requiring responses in 72 days of third parties, Citrix and Microsoft, all these things they wanted to do, and appoint a special master to sort through these things and look for trade secrets that wouldn't be there and aren't there, I think maybe a collateral order doctrine appeal could be attempted. But it certainly isn't an appeal under 1292A, Your Honor. I think that's... If she had granted the motion, we wouldn't have 1292A jurisdiction. Correct. Correct. So I see I have 15, I have 13 seconds left. With respect to the denial of this relief, it's reviewed as, you know, whether or not the Court abused its discretion. And the Court was managing this case for a long time and has continued to manage the case and found that this discovery dispute was one that the Court was managing and the Court, the statute requires that there be clear findings on specific facts, and the Court found under multiple factors that that just wasn't the case. And the Court knew it better than any of us, Your Honor. Thank you so much. Thank you. I'd like to correct a single misstatement by opposing counsel and then touch on three substantive subjects, who is Evinas, jurisdiction, and the scope of the proposed seizure order. My friend said that the prior vendor working with opposing counsel made a mistake by not getting certain documents from the server. The record shows flatly the server was not searched at all, simply wasn't searched. So I'd just like that to be corrected. Mr. Stronsky said Evinas doesn't have the trade secrets. Of course Evinas has the trade secrets. Evinas submitted the abbreviated new drug application, which contains some of our trade secrets. Evinas's president, Dr. Ya, worked for the FDA for 20 years. Aside from an inference from the fact that he worked for the FDA for 20 years, you can look at the individual documents that we have pointed to and that are in the record that show that Dr. Ya was deeply involved in this, leaving most of his sensitive communications to WeChat, which, again, they have refused to search. With regard to jurisdiction, Vuitton actually addressed at the end of the analysis whether a grant would be appealable, and it said a grant and a denial are different. A grant is like the grant of a TRO, and under the statute must be revisited, whereas a denial is final for purposes of that remedy, and the district court there indicated no intention to reconsider, the district court here indicated no intention to reconsider, and in fact ordered us to notify Evinas of the originally ex parte application. With regard to sections and subsections and heading, Mr. Stronsky and I have both made a misstatement with regard to this very complicated statute. My misstatement was saying it's A of 1116 instead of all of 1116, that's injunctions. Mr. Stronsky misstated 1836C. But it's important to know that 1836D is statute of limitations. 1836 is the civil action provision of the Defendant Trade Secrets Act. It's structured differently from the Lanham Act, which has a civil action provision and an injunction provision, which includes seizures as part of injunctions. It's easy to explain why, when Congress expressly wanted to give the same rights to holders of trade secrets, it structured the two statutes differently. It's really not accurate to draw an inference from those differences. We talked a lot in Bhutan about how we were looking at the Lanham Act and 1292 together, and we said again and again, Congress saw the seizure in this act, in the Lanham Act, as inductive. They used that word, we have to give credence to that, we have to credit Congress. But Congress chose not to do that in the DTSA. Explain to me why you're saying that it is injunctive, despite the absence of that word. Your Honor, we're trying to figure out Congressional intent. One thing we know for certain is that Congress intended to give holders of trade secrets at least equal rights with the holders of other kinds of intellectual property. The right to appeal, the right to be before this court and get review of the denial of the seizure order is an incredibly important right, and there's no indication in the statutory text, no indication in the legislative history, that Congress intended to curtail appellate rights 25 years after Bhutan was decided. It's a series of inferences from individual words that in a vacuum might have some persuasive power, but in the bigger picture of Congress wanting to align the rights of different kinds of intellectual property holders, those language differences just don't make any sense as a means of defeating appellate jurisdiction. Finally, if I may, with regard to the scope of the proposed seizure, my friend said what they really want to do is shut us down. No, we don't want to shut them down. Of course not. We want to get the documents that may tell us how they got our trade secrets and what they're doing with them. This is what the statute is written for. This is what the seizure provision of the statute is written for. And if you think of an analogy with regard to getting laptops and cell phones and other things, yes, it's intrusive. No doubt it's intrusive. That's why the statute requires a balancing of harms in this case of a Chinese company red-handed in industrial espionage. But if you think of the leak of the Dobbs decision from the Supreme Court of the United States, every employee in the building was required to turn over laptops and cell phones for forensic analysis, and then they were given back. This is the nature of trying to chase intangible information. Thank you. Thank you. I'll take it under advisement. Thank you.